**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| VINCENT COLE, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-18-3097 |
| | * |
| LT. HANCE PEPPER et al.,[1] | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Vincent Cole, an inmate housed at the Eastern Correctional Institution ("ECI") in Westover, Maryland, brings this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Lieutenant Hance Pepper, Chief of Security Walter Holmes, and Assistant Warden Walter West. ECF No. 1. He alleges that Defendants filed "false" inmate rule violations against him, removed him from his prison job, and changed his security classification in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.* Presently pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 16. Cole has filed an opposition with exhibits. ECF No. 20. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion, which will be construed as a Motion for Summary Judgment, is granted.

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendant Walter Holmes' name.

1

I. **BACKGROUND**[2]

   A. **Factual Background**

On Thursday, June 21, 2018, Cole failed to report for his prison job at Maryland Correctional Enterprises ("MCE") because he was feeling unwell and dizzy. *Id.* at 4. On that same day, all twenty-four inmates assigned to ECI's West MCE workshops also did not show up for work. *Id.* at 1. Cole explains it "[j]ust so happen[ed] the prison heard a rumor that inmates in E.C.I. were going to do a peaceful protest and not show up for work." *Id.* at 5. Cole denies he had "knowledge of any protest nor would have been involved in any kind of protest." *Id.* He states that the Division of Correction Inmate Employment Rules and Regulations Book provides an inmate may take up to four unexcused absences during any thirty-day period before an inmate is subject to security reclassification. Cole maintains that because he has been incarcerated for more than thirty-two years[3] and was to see the Parole Board any day, "you couldn't have forced me to get involved in anything to cause me to loose [sic] my only shot at parole." *Id.* at 4, 5.

Pepper interviewed all twenty-four inmates who were absent on June 21, 2018. ECF No. 1-1 at 1; *see also* ECF No. 16-2 at 2–33. On June 23, 2018, when Pepper asked Cole why he was absent from work, Cole replied that he was sick due to a reaction to his medication and was feeling dizzy. Cole informed Pepper that the information on the prescription states the medicine may cause dizziness. ECF No. 1 at 4, 5. Later that day, Cole gave Pepper a succinct written statement to explain his absence: "I was sick." *Id.*; *see also* ECF No. 16-2 at 9.

On July 6, 2017, Pepper wrote a Notice of Rule Violation, charging Cole with violating Rule 402 (absence from an assigned location without authorization) and Rule 403 (providing

---

[2] Because the Court construes Defendants' Motion as a Motion for Summary Judgment, these facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.
[3] Cole is serving a life sentence for first degree murder, robbery, and burglary. ECF No. 20-1 at 40, 41.

false information). ECF No. 1-1 at 1. In the Notice, Pepper stated that his investigation showed that of the twenty-four inmates at West MCE absent from work on June 21, 2018, twenty-three did not provide a valid reason for their absence. Pepper thus concluded the inmates had participated in an orchestrated, planned work stoppage that day to protest a change in their recreation schedule. Pepper identified Cole as one of the participants. *Id.*; *see also* ECF No. 16-2 at 2–33.

On July 13, 2018, the Maryland Parole Commission deferred a recommendation on Cole's parole application pending the outcome of his disciplinary hearing related to his alleged participation in the work stoppage. ECF 1-1 at 7, 9–11.[4] At his disciplinary hearing on August 9, 2018, Cole pleaded not guilty to the rule violation charges. ECF 16-2 at 36. Cole told the Hearing Officer, "I have 2 blister packs that show I have been a chronic care patient. They have a warning on them that it may cause dizziness. I got up that day felt dizzy, laid back down and blacked out. I told Lt. Pepper I was sick." ECF No. 16-2 at 36. The Institutional Representative at the hearing confirmed that the warning label on Cole's medication stated that it may cause dizziness. ECF No. 16-2 at 36.

The Hearing Officer credited Cole's evidence and offered him an informal resolution. ECF No. 16-2 at 37. Cole accepted an informal resolution by which the Rule 402 charge was reduced to an incident report and the Rule 403 charge was dismissed. Importantly, Cole did not lose any diminution or good time credits. ECF 1-1 at 33; ECF No. 16-2 at 37, 44.

On July 10, 2018, Cole was reclassified out of MCE, and on August 8, 2019, he was classified out of the job bank/wait list for Sanitation into the Lifer's Mental Health Group. ECF No. 1-1 at 2, 3; ECF No. 16-2 at 45. On December 3, 2018, he resumed working for MCE. ECF

---

[4] The record does not state what recommendation was ultimately made by the Parole Board. Cole, however, is still incarcerated at ECI. *See* INMATE LOCATOR, http://www.dpscs.state.md.us/inmate/search (last visited Aug. 8, 2019).

No. 16-2 at 45. On August 1, 2018, Cole was moved to a new housing unit. On September 14, 2018, he was moved to an honors incentives unit. *Id.* at 46.

### B. Procedural Background

Cole filed his Complaint on October 4, 2018. ECF No. 1. In his Complaint, Cole alleges that Pepper wrote a "false" rule violation charge against him, which resulted in the denial of parole and loss of potential diminution credits. ECF No. 1 at 4-5.[5] As relief, Cole requests an investigation into his claims and the "false report" and monetary damages of an unstated sum. *Id.* at 6–7, 12; *see also* ECF No. 16-2 at 2–33. Cole also seeks to bring state criminal misdemeanor charges against Pepper. ECF No. 1 at 12.

Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on December 31, 2018. ECF No. 16. Cole filed a response on February 19, 2019. ECF No. 20. Defendants did not file a reply.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a

---

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

4

> right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

When, as here, matters outside the pleadings are presented to the Court, a 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(b)). A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of

material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In *Anderson v. Liberty Lobby, Inc*., the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

### III. DISCUSSION

Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be construed as a Motion for Summary Judgment because matters outside the pleadings will be considered by the Court. Defendants contend that they are entitled to summary judgment because the Complaint fails to state a claim for relief and there are no genuine disputes of material fact. They also contend that the Complaint must be dismissed because Cole failed to exhaust his administrative remedies, they are entitled to qualified and absolute immunity, and the claims against Hill and Wolfe must be dismissed because the doctrine of *respondeat superior* does not apply to § 1983 claims.

A. **Exhaustion of Administrative Remedies**

Defendants argue Cole has not properly presented his claims through the administrative remedy procedure to the Inmate Grievance Office ("IGO") and therefore this case must be dismissed pursuant to 42 U.S.C. § 1997e.

  i. **Exhaustion Requirement**

The Prisoner Litigation Reform Act provides, in pertinent part at 42 U.S.C. § 1997e:

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *See Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* at 1856–57 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *see also Gibbs v. Bureau of Prisons*,

986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002). Even though exhaustion is mandatory, however, the Court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 136 S.Ct. at 1855 (reiterating that "[a] prisoner need not exhaust remedies if they are not 'available'"). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S.Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. "Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Id.*

ii. **Maryland's Administrative Remedy Procedure**

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an "administrative remedy procedure" ("ARP") for the purpose of "inmate complaint resolution." *See generally* MD. CODE ANN., CORR. SERVS. ("CS") §§ 10-201 *et seq.* (2008 Repl. Vol.); MD.

9

CODE REGS. ("COMAR") 12.07.01.01(B)(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against…official[s] or employee[s] of the Division of Correction [("DOC")]." C.S. § 10-206(a).

The ARP process consists of multiple steps. First, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. Department of Correction Directive ("DCD") No. 185-003, § VI. Moreover, the ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05(A).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has thirty days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05C(2). For prisoners in DOC facilities, this appeal is sent to the Commissioner of Correction. DCD No. 185-004, § VI.

If the Commissioner of Correction denies an appeal, the prisoner has thirty days to file a grievance with the IGO. OPS.185.0002.05D; *see also* C.S. §§ 10-206(a), 10-210; COMAR 12.07.01.05(B); DCD No. 185-002, § VI(N)(1). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07(B).

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-207(c); COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* MD. CODE ANN., STATE GOV'T §§ 10-101 *et seq.*

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i)–(ii); COMAR 12.07.01.10(A). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The ARP process applies to the majority of inmate complaints. However, it does not apply to case management decisions, which are to be directly grieved to the IGO. OPS.185.0002.05F(1). Nor does it apply to Maryland Parole Commission procedures OPS.185.0002.05F(2),(4),(5). Those categories of complaints are addressed through separate administrative processes. *Id.*

### iii. Discussion

As a prisoner, Cole is subject to the strict exhaustion requirements. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). On July 25, 2018, Cole filed ARP request ECI 1569-18, alleging that Pepper's conduct was "unbecoming" of an ECI employee. ECF No. 1-1 at 6–8. Cole complained Pepper charged him with rule violations for missing work on July 21, 2018, even though he knew that Cole was sick that day.

On July 26, 2019, the Institutional ARP Coordinator dismissed the ARP for procedural reasons. Specifically, the coordinator stated that inmates may not resolve a complaint involving disciplinary proceeding and decisions through the ARP process. Cole was informed that the decision was final pursuant to COMAR 12.02.28.04.B. ECF No. 1-1 at 6. Cole did not file any relevant complaints or appeals with the IGO, as required by the ARP process. ECF No. 16-3. He therefore failed to exhaust his administrative remedies. *See Booth*, 532 U.S. at 741 (stating that exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure).

In his opposition, Cole argues without substantiation that he exhausted his administrative remedies. He provides no evidence to refute Defendants' exhibits demonstrating he did not pursue his claims to the IGO. ECF No. 20 at 6. Importantly, he does not claim that the process was unavailable to him. *Id.* Accordingly, this case must be dismissed for failure to exhaust administrative remedies.

## B. Constitutional Claims

Even if Cole had exhausted his administrative remedies, Defendants would still be entitled to summary judgment because the Complaint fails to state a claim and there are no disputes of material facts in the record.

### i. Constitutional Claims

Preliminarily, there are no facts to support Defendant's claims under the Fifth, Sixth, and Eighth Amendments. The Fifth Amendment only protects against the actions of the federal government. *See Massey v. Ojaniit*, 759 F.3d 343, 354 n.5 (4th Cir. 2014) (holding that where the complaint "asserts claims against state, rather than federal, actors," the plaintiff's "relevant due process protections are found in the Fourteenth, rather than the Fifth, Amendment."); *United States v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012) (stating that "the Fourteenth Amendment's Due Process Clause is a limitation on state conduct," while the "due process protections against the federal government are found in the Fifth Amendment"). Defendants are state, not federal, officers, so Cole's claims under the Fifth Amendment fail to state a claim for relief. The substance of Cole's due process allegations will continue under a Fourteenth Amendment analysis.

Further, Cole asserts no facts to establish Defendants' liability under the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Cole is not facing criminal prosecution, so the Sixth Amendment does not apply to the facts alleged in the Complaint.

The Complaint also fails to allege facts to support an Eighth Amendment violation. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Plaintiff's only relevant allegation is that the housing transfer put him in harm's way because there were gang members on his new tier. ECF No. 1 at 8. He does not claim he was actually attacked, provide the names of the inmates who purportedly threatened him, or allege any other facts that would raise an inference that he was at substantial risk of serious harm. *See Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (stating that a plaintiff must prove that he suffered from a serious or significant physical or emotional injury and that the prison official was aware that a substantial risk of serious harm existed in order for the plaintiff to succeed on an Eighth Amendment failure-to-protect claim). Thus, the Complaint fails to allege any claim under the Eighth Amendment.

Finally, Plaintiff fails to allege a Fourteenth Amendment violation. The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV. To succeed on a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Imprisonment is deprivation of a liberty interest, but it is constitutional, provided that the conviction is valid and "the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

Cole's Fourteenth Amendment claim fails because he has not alleged any protected property or liberty interest. Inmates generally have no liberty interest in obtaining a particular

14

security classification, earning diminution credits, holding a prison job, or transferring to a particular correctional facility, and there is no constitutional right for an inmate to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See McKune v. Lile*, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Sandin*, 515 U.S. at 484 (holding that protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); *Meachum*, 427 U.S. at 225 (holding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (no constitutional right to a "particular security or custody status"). The lack of opportunity to earn diminution credits is also not an atypical and significant hardship implicating due process protections. *Meachum*, 477 U.S. at 225–26; *see Robinson-Bey v. Corcoran*, No. L–00–CV–3452, 2001 WL 34799270, at *2 (D. Md. Apr. 12, 2011) ("There is no constitutional right to diminution credits."). Thus, Cole has not alleged that Defendants' conduct raised due process concerns related to his job, classification, housing, or credits.

Further, the Constitution does not create a protected liberty interest in the expectation of early release on parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Jago v. Van Curen*, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). Without a protected liberty interest in parole, a prisoner typically cannot mount a challenge against a state parole review procedure on procedural or substantive due process

15

grounds. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Moreover, it is well-settled law that a Maryland inmate has no colorable federal constitutional interest in parole or in a parole hearing. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (no liberty interest in parole unless arising from statutes or regulations); *Greenholtz*, 442 U.S. at 7 (same); *Patuxent Inst. Bd. of Review v. Hancock*, 329 Md. 556, 583 (1993) (a liberty interest in parole in Maryland does not arise until inmate signs the Order for Parole to indicate acceptance of the conditions of the parole); *McLaughlin-Cox v. Maryland Parole Comm'n*, 200 Md. App. 115, 120 (Md. Ct. Spec. App. 2011) (Maryland statutes governing parole consideration do not create a liberty interest protected by the Fifth and Fourteenth Amendments to the U.S. Constitution). Thus, Cole has not alleged any due process violations related to his parole or parole hearing.

Defendants' alleged failure to follow DOC and institutional policies also does not establish a liberty or property interest. "[A]doption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015) (citing *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987)), *aff'd*, 644 F. App'x 243 (4th Cir. 2016); *see also Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) (noting "a state does not necessarily violate the Constitution every time it violates one of its rules"). "Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met." *Kitchen*, 116 F. Supp. 3d at 629 n.6 (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)). Thus, there is no due process claim available to Cole based on the Defendants' alleged failure to follow internal policies.

Cole has also not alleged any due process violations related to his disciplinary hearing. Where an inmate faces the possible loss of good conduct credits, he is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 563–64 (1974). Procedural due process protections include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 540, 564, 570–71. The record shows Cole received these protections at his hearing, and he does not claim otherwise. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Marshall v. Odom*, 156 F. Supp. 2d 525, 533 (D. Md. 2001) (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Cole does not allege any substantive due process violations, and even if he had, he has no constitutional right to be free from the false accusations about which he complains. *See* ECF No. 16-2 at 37.

Finally, to the extent that Cole intends to assert that Defendants retaliated against him in violation of his First Amendment rights, *see* ECF No. 1 at 11, he "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Because there is no constitutional violation stated here and Cole has not provided specific evidence of retaliation, a retaliation claim is unavailing.

## ii. *Respondeat Superior*

Section 1983 imposes liability on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based on the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (requiring an affirmative showing that the official charged acted personally in the deprivation of the plaintiff's rights). An individual cannot be held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 690; *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983).

Cole's claims focus on Pepper's actions, and he faults Holmes and West in their "individual and personal capacities" only for placing him on a "gang tier." ECF No. 1 at 8–9. Cole does not allege either Holmes or West was personally involved in his housing assignment or aware that he was purportedly at risk of harm. Rather, Cole seems to fault Holmes and West as supervisors for permitting Pepper to "enforce[e] his officer's 'false report.'" *Id.* at 7. He is therefore suing them in their supervisory capacity.

To hold Holmes or West culpable under a theory of supervisory liability, Cole must show (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). Absent any

allegation that West or Holmes had actual or constructive knowledge of a subordinate's actions causing a risk to him to implicate supervisory liability, Cole's sole basis for his claims against them is the responsibilities associated with their job titles, otherwise known as *respondeat superior*, which is not applicable in a civil rights complaint filed under 42 U.S.C. § 1983. For these reasons, the Complaint also fails to state a claim against West and Holmes.[6]

### C. State Claims

Cole also seeks to pursue state criminal and tort claims against Pepper. ECF No. 1 at 6, 9. Allegations of criminal violations may be initiated only by a prosecutor, so Cole has no cause of action related to any criminal prosecution of Pepper. *See Leeke v. Timmerman*, 454 U.S. 84, 86–87 (1981); *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) (private citizens lack a judicially cognizable interest in the criminal prosecution of another). Furthermore, no federal claims remain in this case, so the Court declines to exercise pendant jurisdiction over Cole's state tort claims and shall dismiss them without prejudice.

## IV. CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted. A separate Order follows.

Date: September   30, 2019                                   /s/
                                                             GEORGE J. HAZEL
                                                             United States District Judge

---

[6] Because the Court concludes that the Complaint must be dismissed due to Cole's failure to exhaust his administrative remedies, and because, even if he had met the exhaustion requirement, his Complaint fails to state a claim, the Court need not address Defendants' absolute and qualified immunity defenses.